IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM V. BYRD,           :

      Plaintiff,           :

vs.                  :      CA 06-0634-C

MICHAEL J. ASTRUE,      :
Commissioner of Social Security,
                     :
      Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and
1383(c)(3), seeking judicial review of a final decision of the Commissioner of
Social Security denying his claims for disability insurance benefits and
supplemental security income. The parties long ago consented to the exercise
of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all
proceedings in this Court. (Doc. 13 ("In accordance with the provisions of 28
U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a
United States Magistrate Judge conduct any and all proceedings in this case,
. . . order the entry of a final judgment, and conduct all post-judgment
proceedings."); *see also* Doc. 14 (order of reference)) Upon consideration of

the administrative record, plaintiff's proposed report and recommendation, the Commissioner's brief, and the parties' arguments at the September 30, 2009 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to residuals, specifically pain, from a T12 compression fracture. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.      The claimant has the following severe impairment: T-12 compression fracture. (20 CFR 404.1520(c) and 416.920(c)).**
>
>                          .         .         .
>
> **4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
>                          .         .         .
>
> **5.      After careful consideration of the entire record, the**

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 13 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**undersigned Administrative Law Judge finds that the claimant has retained the physical residual functional capacity to perform at least at the light strength or exertional level, in function-by-function physical terms (SSRs 83-10 and 96-8p) with certain exertional, postural, manipulative, and environmental restrictions associated with that level of exertion. The claimant's specific physical capacities and limitations during the period of adjudication have been the ability to sit for a total of 8 hours during an 8-hour workday; the ability to stand for a total of 6 hours during an 8-hour workday; the ability to walk for a total of 4 hours during an 8-hour workday; the ability to continuously lift 6 to 10 pounds, continuously carry up to 5 pounds, frequently lift 21 to 25 pounds, frequently carry 11 to 20 pounds, occasionally lift 26 to 50 pounds, and occasionally carry 21 to 25 pounds; the ability to use his hands for repetitive action such as simple grasping and pushing and pulling of arm controls but not for fine manipulation; the ability to use his feet for repetitive movements as in pushing and pulling of leg controls; the ability to frequently reach; and the ability to occasionally bend, squat, crawl, and climb. With respect to environmental limitations, the claimant is totally restricted from activities involving unprotected heights and he is moderately restricted from activities involving being around machinery.**

In finding that the claimant has the above described residual functional capacity, the undersigned . . . assigned determinative evidentiary weight to the findings and opinions of the examining orthopedic surgeon, Dr. Fontana, as set out in the Physical Capacities Evaluation (PCE) form at Exhibits 6F and B2F. Dr. Fontana is a specialist in his area of medical practice, he is well qualified to evaluate the claimant's complaints and form conclusions regarding his symptoms, conditions, and resulting limitations, and his conclusions are consistent with and supported by the substantial evidence contained in the record, as well as by his own objective clinical examination findings.

3

.       .        .

To the extent Dr. Quindlen's opinions are consistent with those of the examining orthopedic surgeon, Dr. Fontana, they have been assigned determinative evidentiary weight. However, the undersigned is unable to assign significant evidentiary weight to Dr. Quindlen's opinions in the Clinical Assessment of Pain form because they are inconsistent with his opinions of the claimant's functional capacities and limitations in both his May 14, 2003 treatment note and the February 2, 2004 PCE form, and they are inconsistent with his own clinical examination findings and those of the examining orthopedic surgeon, Dr. Fontana. Dr. Quindlen's statement in the pain form that the claimant's pain is present to such an extent as to be distracting to the adequate performance of daily activities or work and that physical activity such as walking, standing, bending, stooping, moving of extremities, etc., will greatly increase the claimant's pain to such a degree as to cause distraction from task or total abandonment of task is inconsistent with his opinions in the PCE form that the claimant can frequently lift and/or carry 10 pounds, occasionally lift and/or carry 20 pounds, stand or walk a combined [] 8 hours per day, and has no restriction in activities such as pushing and pulling movements or working with or around hazardous machinery.   Additionally, the claimant's clinical examination findings have often been found to be normal or only minimally abnormal and the objective diagnostic evidence of record has not established the presence of a continuous disorder of such severity as to produce disabling pain.

.       .        .

In making the above findings, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529, 416.929, and SSRs 96-4p and 96-7p.

.       .        .

4

*While it is credible that the claimant experiences some pain and functional limitations secondary to his T-12 compression fracture, there is no evidence that he has experienced the level of dysfunction to the extent he has alleged*. This conclusion is supported by the fact that the treatment records fail to document persistent reliable manifestations of a disabling loss of functional capacity by the claimant resulting from his reported debilitating symptomatology. Dr. Quindlen's and Dr. Ruan's treatment records and Dr. Fontana's examination report failed to document findings of significant loss of range of motion in the claimant's thoracic or lumbosacral spine and showed no evidence of significant muscle atrophy, muscle spasm, muscle weakness, or sensory or motor disruption, all of which are usually reliable indicators from which to make a reasonable inference that an individual is experiencing moderate to severe pain. The records also document inconsistencies in the frequency, duration, and severity of the claimant's pain and other alleged symptomatology. Numerous treatment records described the claimant's pain as intermittent or occasional, yet the claimant testified his pain was constant and severe.

The undersigned notes that the although the most recent x-ray of the claimant's spine, which was performed by Dr. Quindlen on June 13, 2005, showed T12 compression wedge fracture with about 20% compression, there is no objective medical evidence to indicate that the claimant suffers from any severe acute or chronic vertebrogenic related disorders such as disc herniation, nerve root impingement, spinal stenosis, or facet joint hypertrophy and there have been no hospitalizations for the claimant's alleged symptomatology. It is significant that, at the time of the claimant's last office visit on October 26, 2005, the claimant's treating neurosurgeon, Dr. Quindlen, stated his diagnostic impression of the claimant's condition as "T12 compression fracture without mention of spinal cord injury." Additionally, Dr. Quindlen assigned the claimant only a 5% permanent partial disability to the body as a whole due to his T12 compression fracture and stated that vocational rehabilitation was reasonably calculated to restore the claimant

to gainful employment. The undersigned also finds it significant that, until May, 2006, the claimant was treated with a back brace and physical therapy and that there has never been any indication that surgical intervention was necessary. Moreover, the injection therapy administered at Dr. Ruan's direction since August, 2006 appears to be based more on subjective, rather than objective, considerations, inasmuch as Dr. Ruan described the claimant's pain as "somatic referred pain."

In making a determination as to the credibility of the claimant's subjective complaints, the Administrative Law Judge also considered the claimant's daily activities. The claimant reported that, on an average day, he walks around his house, sits for approximately 30 minutes watching television, and sits for periods of time on his front porch. He further indicated that he remains able to drive an automobile, that he is able to care for his own personal needs without assistance, that he does not require an assistive device for ambulation, that he can lift up to 15 pounds, and that he can stand for approximately 2 hours at a time. The undersigned acknowledges that the claimant testified that he lies down during the day because of his pain, but there is no documentary medical evidence to support this allegation and no treating or examining physician has indicated that the claimant is required to rest or recline during the day because of his pain.

The undersigned also finds that the claimant's credibility is undermined by the significant gap in medical treatment during the period March, 2004 to June, 2005. It is more than reasonable to expect that the claimant would seek medical treatment on a regular and persistent basis if he, in fact, experienced the pain, discomfort, and other alleged symptomatology in the incapacitating severity, frequency, and duration that he has reported. Instead, the record reflects that the claimant went well over one year without seeking treatment from Dr. Quindlen or any other physician. The claimant has testified that he was taking prescription narcotic pain medication during this period of time but the undersigned finds it unlikely that the prescription

6

would have lasted 15 months.

With respect to the claimant's alleged difficulty concentrating, said symptom has not been mentioned by the claimant in any other context and no examining or treating physician has noted any such complaint by the claimant. Furthermore, the undersigned notes that the claimant has not alleged that he has suffered from any severe mental impairment at any time during the relevant period under consideration.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment *could reasonably be expected to produce the alleged symptoms*, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms *are not entirely credible*.

**6.     The claimant is unable to perform any of his past relevant work. (20 CFR 404.1565 and 416.965).**

.     .     .

**7.     The claimant was born on November 15, 1953 and was 49 years old on the alleged disability onset date, which the Regulations define as a younger person. The claimant is currently 54 years old, which the Regulations classify as an individual closely approaching advanced age. (20 CFR 404.1563 and 416.963).**

**8.     The claimant has a high school education and is able to communicate in the English language. (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404,**

Subpart P, Appendix 2).

**10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

Once it is established that the claimant is unable to perform his past relevant work, the burden of proof shifts to the Commissioner to show that there are other jobs which exist in significant numbers in the national economy to which the claimant is able to make a successful vocational adjustment considering his age, education, work experience and residual functional capacity. In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Assuming that the claimant possessed the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and 202.14. However, the claimant's ability to perform

a ***full range of work at the light exertional level has been compromised by nonexertional limitations*** and consideration has been given to the claimant's additional exertional, postural, manipulative, and environmental limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and the physical capacities and limitations as set out in Exhibits 6F at page 3 and B2F at page 8, which is the claimant's residual functional capacity as set out above in this decision. Mr. Murphy testified that such an individual as described in the Administrative Law Judge's hypothetical question would be capable of performing the requirements of representative light unskilled occupations with no repetitive fine manipulation and he gave the following examples of such jobs: (1) Mail Clerk, in a non-postal capacity, DOT classification number 209.687-026, with 350,000 jobs in the national economy and 2,300 jobs in the state economy; (2) Light duty Custodial work, DOT classification number 920.687-146, with 1,700,000 jobs in the national economy and 2,500 jobs in the state economy; and (3) Courier, DOT classification number 230.663-010, with 440,000 jobs in the national economy and 3,700 jobs in the state economy. Mr. Murphy further testified that there were a total of approximately 15,000,000 unskilled light jobs in the national economy that said hypothetical individual could perform and a total of approximately 50,000 such jobs in the state economy.

The undersigned also asked Mr. Murphy whether jobs exist in the national economy for an individual with the claimant's age, education, and past relevant work, who possessed the physical capacities and limitations as set out by Dr. Quindlen in the PCE form at Exhibit 3F. Mr. Murphy testified that all of the unskilled light work that he identified in response to the previous hypothetical question would be appropriate for such an individual.

Pursuant to SSR 00-4p, the Administrative Law Judge finds that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles and that his testimony [is] credible and consistent with the other evidence in the record. Other hypothetical questions were asked that elicited other responses from the vocational expert. Those questions contained hypothetical information that is inconsistent with the residual functional capacity of this decision and, accordingly, the vocational expert's responses thereto are of no probative value.

Based on the testimony of the vocational expert and the totality of the credible evidence of record, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 24, 2003 through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 597, 600, 602, 603, 604-605 & 606-607 (some internal citations omitted; some emphasis supplied)) The Appeals Council affirmed the ALJ's decision (Tr. 579-581) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001

(11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs identified by the vocational expert and is not disabled under the framework of the grids, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d

129, 131 (11th Cir. 1986).

In this case, the plaintiff contends that the ALJ made the following errors: (1) he erred on remand in failing to give proper weight to the state-court's worker's compensation decision; (2) he improperly evaluated the pain allegations; and (3) his residual functional capacity determination is not supported by substantial evidence. Underlying plaintiff's second and third assignments of error is plaintiff's contention that the hypothetical question upon which the ALJ based his denial of benefits failed to describe or quantify plaintiff's pain (*compare* Doc. 24, at 18 & 25 ("'Pain alone, as attested to by plaintiff's treating physician, is sufficient to establish disability status.' . . . Byrd's complaints of pain are documented throughout the record. . . . Clearly, Byrd's treating physician believed that Byrd's 'objectively determined medical condition can reasonably be expected to give rise to the claimed pain.' Otherwise, Dr. Quindlen would not have opined that the pain is 'present to an extent as to be distracting to adequate performance of daily activities or work.' [] Thus, Byrd meets the second prong of the pain standard.") *with id.* at 30 ("Most importantly, the ALJ includes no level of pain at all in his residual functional capacity findings.")), thereby rendering the hypothetical incomplete and once again requiring remand of this action. Because the Court agrees with

12

plaintiff's "hybrid" argument, this Court need not reach the other issues raised by plaintiff. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

It is clear in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The Commissioner must articulate specific jobs that the claimant can perform given his age, education and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." *See id.* (citation omitted). The means by which the Commissioner meets this burden include use of the grids and reliance on vocational expert testimony. *See id*. at 1201-1202. It is clear in this circuit that "[i]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citation omitted), *cert. denied*, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must

pose a hypothetical question which comprises all of the claimant's impairments.").

This case is "at bottom" a pain case and while the ALJ specifically recognized that plaintiff's T-12 compression fracture was an impairment which could reasonably "produce the alleged symptoms," he then concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." The problem with the ALJ's rather lengthy analysis (Tr. 603-605) is that he never acknowledges the level of pain plaintiff suffers; instead, all one knows from reading the opinion is that the ALJ believes plaintiff has pain that is not disabling. Even assuming the correctness of the ALJ's determination that plaintiff's pain is not disabling in and of itself, however, the evidence of record overwhelmingly establishes that Byrd's primary limiting impairment is his chronic back pain (*see, e.g.,* Tr. 122-137, 317-552, 559-563, 622, 625-639, 704-710 & 719-738).[2] Accordingly, it is incumbent upon the ALJ to quantify/describe such pain, based upon the evidence of record, and pose questions to a VE about the impact of such

---

[2]      That plaintiff's pain is a significant problem is established by evidence of the steroid blocks he has received (*see, e.g.,* Tr. 729-731), his use of narcotic pain medication in an attempt to alleviate same (*see, e.g.,* Tr. 139, 337, 433, 629-636 & 719-720), and the fact that he has a T-12 compression fracture (*see, e.g.,* Tr. 704, 708 & 719).

14

impairment and the limitations attributable to that impairment,[3] *Foote, supra*, 67 F.3d at 1559 ("Pain is a nonexertional impairment."); *see Phillips v. Barnhart*, 357 F.3d 1232, 1242 n.11 (11th Cir. 2004) ("Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all other physical limitations that are not included in the seven strength demands.") upon plaintiff's ability to perform the physical and mental requirements of other work in the national economy. This is particularly true in a pain case, such as this one, where the ALJ has not only rejected the only pain assessments of record completed by examining or treating physicians (*compare* Tr. 602 & 603 *with* Tr. 132-133 & 135-137)[4] but, as well, mitigated or ignored every indicia of pain in the record (*see* Tr. 603-605).[5] Because the

---

[3]       It is not asking the unusual of ALJs to quantify a claimant's pain and include such description in a hypothetical posed to a vocational expert. *Cf. Webster v. Barnhart*, 343 F.Supp.2d 1085, 1089 n.15 (N.D. Ala. 2004) ("The ALJ chose to describe plaintiff's pain as 'moderate' when posing his hypothetical to the vocational expert.").

[4]       Certainly, these forms have meaning beyond that which is set forth in a physical capacities form; otherwise, ALJs would not rely on such forms when they support a determination that a claimant's pain is not severe, much less disabling.

[5]       For instance, the ALJ's only mention of pain medication is to chronicle his disbelief that plaintiff could have taken narcotic pain medication during the period March, 2004 to June, 2005, when there is a gap in treatment history. (Tr. 605 ("The claimant has testified that he was taking prescription narcotic pain medication during this period of time but the undersigned finds it unlikely that the prescription would have lasted 15 months.")) He totally ignored the clear evidence of record that plaintiff was prescribed Lortab by Dr. Quindlen (*see,*

hypothetical upon which the ALJ bases his denial of benefits did not contain

a description of plaintiff's pain (*compare* Tr. 607 *with* Tr. 640-642), this cause

must be reversed and remanded for further proceedings not inconsistent with

this decision.

## <u>CONCLUSION</u>

The Court **ORDERS** that the decision of the Commissioner of Social

Security denying plaintiff benefits be reversed and remanded pursuant to

sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct.

2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this

decision.  The remand pursuant to sentence four of § 405(g) makes the plaintiff

---

*e.g.,*  Tr.139,  337, 433 & 719), a narcotic pain medication indicated for the relief of moderate to moderately severe pain, PHYSICIAN'S DESK REFERENCE, at 2567 (50th ed. 1996), and more recently, Tylox by Dr. Xiulu Ruan (Tr. 720), a narcotic pain medication indicated for the relief of moderate to moderately severe pain, PDR, *supra*, at 1584.  Ignoring indicia of pain runs contrary to the Commissioner's regulations. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) & 416.929(c)(3)(i)-(vii) (2009) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.").

In addition, the ALJ's attempt to mitigate the steroid blocks administered by Dr. Ruan (Tr. 729-731) by suggesting that same "appear to be based more on subjective, rather than objective, considerations[,]" (Tr. 604) again is contrary to the regulations. *See* 20 C.F.R. §§ 404.1529(c) & 416.929(c).

a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C.

§ 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239

(1993), and terminates this Court's jurisdiction over this matter.

      **DONE** this the 15th day of October, 2009.

                  s/WILLIAM E. CASSADY
                  **UNITED STATES MAGISTRATE JUDGE**